MARIA ZAVALA, APPELLANT, V.
CONAGRA BEEF COMPANY, APPELLEE.
655 N.W.2d 692

Filed January 24, 2003.　No. S-01-1083.

Lee S. Loudon, of Law Office of Lee S. Loudon, P.C., L.L.O., for appellant.

Shirley K. Williams and Joseph A. Wilkins, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Maria Zavala petitioned for workers' compensation benefits for injuries she sustained while working for ConAgra Beef Company (ConAgra). The Nebraska Workers' Compensation Court trial judge found that Zavala had sustained a 50-percent loss of earning capacity and awarded her a 2-percent permanent partial impairment status for her right upper extremity as well as vocational rehabilitation benefits. A review panel of the compensation court affirmed the trial judge's decision but eliminated the award of vocational rehabilitation. The Nebraska Court of Appeals reversed the judgment of the review panel and remanded the cause with directions. See *Zavala v. ConAgra Beef Co.*, 11 Neb. App. 235, 647 N.W.2d 656 (2002). We granted ConAgra's petition for further review.

## SCOPE OF REVIEW

■ An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Vega v. Iowa Beef Processors*, 264 Neb. 282, 646 N.W.2d 643 (2002).

■ Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002).

■ The meaning of a statute is a question of law, *Vega v. Iowa Beef Processors, supra*, and an appellate court is obligated in workers' compensation cases to make its own determinations as

to questions of law, *Larsen v. D B Feedyards*, 264 Neb. 483, 648 N.W.2d 306 (2002).

## FACTS

On October 18, 1999, Zavala was employed as a "head trimmer" at ConAgra's Monfort plant in Grand Island. She was injured when she picked up a cow's head and threw it into the garbage. Following the accident, Zavala complained of right shoulder and neck pain and was examined by Dr. Frank Lesiak. Lesiak determined that Zavala had sustained injuries to her cervical spine and right upper extremity as a result of the single accident. Lesiak stated that Zavala's condition was not directly caused by her employment but was aggravated by the October 1999 accident. Lesiak opined that Zavala received a "7% whole person impairment," which he stated was the result of a 5-percent impairment to the cervical spine and a 2-percent impairment to the right upper extremity. Lesiak imposed work restrictions and prescribed medication and specialized physical therapy.

In December 1999, Zavala returned to work as a steam vacuum operator. Zavala complained that this job required too much reaching and that as a result, she was experiencing problems in and around her neck and shoulders. In January 2000, Zavala was moved to another job, where she spent 4 hours each day hanging tails and hearts and 4 hours scraping tongues. Zavala and a coworker were subsequently discharged following an incident in which she sliced the coworker's arm twice.

In April 2000, Zavala petitioned for workers' compensation benefits for the injuries she sustained in October 1999. Gayle Hope, a vocational counselor, was assigned by the compensation court to provide a loss-of-earning-capacity report for Zavala. Taking into consideration a number of factors, including a 7-percent whole body impairment, Hope concluded that upon obtaining minimal skills in English and vocational services, Zavala would experience a loss of earning capacity of approximately 60 percent. Hope also concluded that if Zavala did not receive vocational services and did not learn to speak minimal English, she would be an odd-lot worker because it was unlikely that she would be able to find employment in Grand Island.

Deborah Determan, a vocational rehabilitation counselor, testified by deposition for ConAgra. Determan opined that Hope's earning-capacity determination was too high because Hope failed to consider that Zavala lost her job with ConAgra because of her wrongful conduct, not her reported injury or inability to perform the job. Determan claimed that Hope's analysis utilized an incorrect average wage of $12.12 per hour when Zavala's actual base pay at the time of the injury was $9.25 per hour. She further testified that Hope's analysis was inaccurate to the extent that it was based upon the combination of a scheduled member injury and a whole body injury. It was Determan's opinion that only restrictions related to a whole body injury should be considered in a loss-of-earning-capacity analysis and that such analysis should not include consideration of the effect of a scheduled member injury.

The trial judge concluded that Zavala had sustained a 50-percent loss of earning capacity and a 2-percent permanent partial disability to her right upper extremity as a result of the work-related accident. Zavala was awarded $161.77 per week for 300 weeks for the 50-percent loss of earning capacity and an additional $323.53 per week for 4.5 weeks for the 2-percent permanent partial disability to her right upper extremity. Zavala was also awarded vocational rehabilitation benefits.

The trial judge stated that but for Zavala's termination, she could have continued to perform the last position she held. The judge therefore found that Hope's determination that Zavala was an odd-lot worker had been rebutted.

On appeal to the review panel, Zavala argued that the trial judge erred in failing to combine her scheduled member injury and her whole body injury to find her permanently and totally disabled. The review panel found that absent specific statutory authority, such injuries could not be combined to determine permanent and total disability. It affirmed the trial judge's award but eliminated the vocational rehabilitation benefits.

Zavala appealed to the Court of Appeals, which stated:

> The trial judge rejected the contention that Zavala was permanently and totally disabled, citing the basic opinions of both Hope and Determan and finding that Hope's opinion that Zavala was limited to being an odd-lot worker had been

rebutted. At least by implication, the trial judge was critical of the fact that Hope had "considered both [Zavala's] restrictions to the body as a whole and right upper extremity in formulating her opinion that [Zavala] is an odd-lot worker." For convenience, we shall refer to the combining of member and nonmember impairments to determine loss of earning capacity as "stacking."

The trial judge does not specifically opine whether stacking of injuries is legally permissible. However, the implication, including the reliance upon Determan's report criticizing Hope's methodology, suggests that the trial judge's position is that such stacking is improper. Nonetheless, the trial judge specifically found, in determining whether Hope's opinion had been rebutted, that the fact that Zavala "successfully worked for four months in a light duty position with [ConAgra] in and of itself shows that she is not an odd-lot worker." The trial judge concluded that Zavala had sustained a 50-percent loss of earning capacity, but she ordered vocational rehabilitation, specifically an "English as a Second Language" program.

*Zavala v. ConAgra Beef Co.*, 11 Neb. App. 235, 240, 647 N.W.2d 656, 661 (2002).

The Court of Appeals stated that the trial judge had apparently concluded that Hope had considered both Zavala's restrictions to the body as a whole and the right upper extremity in formulating her opinion that Zavala was an odd-lot worker. The Court of Appeals concluded that this could be read as a rejection of "stacking" but that it was not clear whether the trial judge's decision rested on a rejection of "stacking," a factual finding that Zavala was not an odd-lot worker, or both.

The Court of Appeals resolved the issue by concluding that

[b]ecause the trial judge's view that stacking is impermissible under Nebraska law appears to have been part of the basis for her finding that Hope's opinion that Zavala was an odd-lot worker had been rebutted, this matter must be reversed for consideration anew on the record already made of Hope's opinion in light of our holding that stacking of a member impairment with a whole body injury is permissible. This action is further necessitated because the trial

judge's finding that Hope's opinion had been rebutted is not explained with a clear and concise rationale as required by rule 11.

Moreover, because in our view, the findings of both the trial judge and the review panel concerning Zavala's entitlement to vocational rehabilitation are inextricably intertwined with their positions that stacking is impermissible under Nebraska law, we reverse the decision of the review panel which eliminated the award of vocational rehabilitation and direct that the question of vocational rehabilitation be reconsidered by the trial judge on the record already made in light of our holding about stacking.

*Id.* at 249-50, 647 N.W.2d at 667-68. We granted ConAgra's petition for further review.

## ASSIGNMENTS OF ERROR

In its petition for further review, ConAgra assigns the following errors: The Court of Appeals erred (1) in concluding that a scheduled member injury may be considered with a whole body injury to determine loss of earning capacity and (2) in failing to affirm the trial judge's decision that Zavala was not an odd-lot worker for the reason that the trial judge's opinion clearly stated that "the fact that [Zavala] successfully worked for four months in a light duty position with [ConAgra] in and of itself shows that she is not an odd-lot worker."

## ANALYSIS

We first address whether there was sufficient evidence for the trial judge to find that Zavala was not an odd-lot worker. The trial judge concluded that the court-appointed vocational counselor's opinion that Zavala was an odd-lot worker had been rebutted. The trial judge stated that the fact that Zavala successfully worked for 4 months in a light-duty position with ConAgra in and of itself showed that she was not an odd-lot worker.

The Court of Appeals concluded: "Because the trial judge's view that stacking is impermissible under Nebraska law appears to have been part of the basis for her finding that Hope's opinion that Zavala was an odd-lot worker had been rebutted, this matter must be reversed for consideration anew on the record . . . ." *Zavala v. ConAgra Beef Co.*, 11 Neb. App. 235, 249-50,

647 N.W.2d 656, 667 (2002). It also determined that the trial judge had not explained her finding with a clear and concise rationale as required by Workers' Comp. Ct. R. of Proc. 11 (2000). We disagree.

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Vega v. Iowa Beef Processors,* 264 Neb. 282, 646 N.W.2d 643 (2002). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Frauendorfer v. Lindsay Mfg. Co.,* 263 Neb. 237, 639 N.W.2d 125 (2002). In testing the sufficiency of the evidence to support the findings of fact, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Id.* Moreover, as the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.*

An odd-lot worker, while not altogether incapacitated for work, is one who is so handicapped that he or she will not be employed regularly in any well-known branch of the labor market. See *Schlup v. Auburn Needleworks,* 239 Neb. 854, 479 N.W.2d 440 (1992). While Zavala was working in her new position, she never missed work due to injury and she never saw a doctor. During that time, Zavala did not report having any trouble performing her job, nor did she request a job change. After 4 months in her new position, Zavala was fired following an incident in which she sliced a coworker's arm twice after the coworker rubbed a cow's tongue on Zavala's posterior.

The trial judge made a factual finding that based on her successful return to work after her injuries, Zavala was not an odd-lot worker. We conclude that the record contains sufficient evidence to support the trial judge's factual finding that Zavala

was not an odd-lot worker, and therefore, the judge's finding was not clearly wrong. The trial judge's rationale was that Zavala had successfully worked for 4 months in the light-duty position with ConAgra. This was a clear and concise statement that complied with rule 11.

We now proceed to determine whether a scheduled member injury should be considered with a whole body injury in calculating loss of earning capacity when both injuries resulted from the same accident. The Court of Appeals determined that the trial judge's apparent rejection of what it referred to as "stacking" and the review panel's outright rejection of "stacking" were so inextricably intertwined with the award that the cause must be remanded for reconsideration on the record already made.

The Court of Appeals held that "Nebraska law does not prohibit consideration of the effect of a member injury when loss of earning capacity is assessed for a worker who also has sustained a whole body injury." *Zavala v. ConAgra Beef Co.*, 11 Neb. App. 235, 249, 647 N.W.2d 656, 667 (2002). In emphasizing that Zavala had two separate areas of injury, arm and cervical spine, which could be considered together to determine the extent of loss of earning capacity, the court explained:

> If the combination of the two injuries produces permanent total disability, see *Benish Kaufman v. Control Data*, 237 Neb. 224, 465 N.W.2d 727 (1991), then the Nebraska Workers' Compensation Act does not preclude such an award as a matter of law. And, if the member impairment adversely affects the worker such that loss of earning capacity from the unscheduled injury cannot be fairly and accurately assessed without considering the impact of a scheduled injury on the worker's employability, then stacking is permissible.

*Zavala v. ConAgra Beef Co.*, 11 Neb. App. at 249, 647 N.W.2d at 667.

In its petition for further review, ConAgra argues that the Court of Appeals erred in concluding that a scheduled member injury may be considered with a whole body injury to determine loss of earning capacity. ConAgra asserts that a compensation court cannot award industrial disability benefits that are not explicitly provided for by statute and that no statute confers authority to the

compensation court to award industrial benefits for a scheduled member injury when an employee suffers a whole body injury in the same accident.

■ The Workers' Compensation Court, as a statutory tribunal, is a court of limited and special jurisdiction and possesses only such authority as is delineated by statute. *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002). Neb. Rev. Stat. § 48-152 (Reissue 1998) provides in part that the compensation court "shall have authority to administer and enforce all of the provisions of the Nebraska Workers' Compensation Act, and any amendments thereof, except such as are committed to the courts of appellate jurisdiction."

■ The meaning of a statute is a question of law, *Vega v. Iowa Beef Processors*, 264 Neb. 282, 646 N.W.2d 643 (2002), and an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law, *Larsen v. D B Feedyards*, 264 Neb. 483, 648 N.W.2d 306 (2002). As an aid to statutory interpretation, appellate courts must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Newman v. Thomas*, 264 Neb. 801, 652 N.W.2d 565 (2002).

■ The Legislature enacted the Nebraska Workers' Compensation Act (Act) in order to relieve injured workers from the adverse economic effects caused by a work-related injury or occupational disease. *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001). It is in light of this beneficent purpose that we have consistently given the Act a liberal construction to carry out justly the spirit of the Act. See *id.*

We stated in *Jeffers v. Pappas Trucking, Inc.*, 198 Neb. 379, 384-85, 253 N.W.2d 30, 33-34 (1977):

> Section 48-121 . . . provides for compensation for three categories of job-related disabilities. Subdivision (1) sets the amount of compensation for total disability; subdivision (2) sets the amount of compensation for disability partial in character, except in cases covered by subdivision (3); and subdivision (3) sets out "schedule" injuries to specified parts of the body with compensation established therefore. Disability under subdivisions (1) and (2) refers

to loss of employability and earning capacity, and not to functional or medical loss alone. . . . Thus losses in bodily function, so far as subdivisions (1) and (2) are concerned, are important only insofar as they relate to earning capacity and employability. . . .

For claims falling under subdivision (3), however, it is immaterial whether an industrial disability is present or not. . . . There is, however, an exception to this rule. Where "an employee has suffered a schedule injury to some particular member or members, and some unusual or extraordinary condition as to other members or any other part of the body has developed," he may be compensated under subdivision (1) or (2) of section 48-121.

(Citations omitted.)

Neb. Rev. Stat. § 48-121 (Cum. Supp. 2002) does not specifically address how compensation is to be established when a worker suffers both a scheduled member injury under subsection (3) and a whole body injury under subsection (2) as a result of a single accident. ConAgra argues that if the Legislature had intended that the compensation court award industrial disability benefits under § 48-121(2) for a scheduled member injury when a worker suffers a whole body injury in the same accident, it would have done so by statute. ConAgra asserts that the absence of a statutory provision specifically granting the compensation court the requisite authority to award such benefits precludes the court from doing so.

We point out that the Act falls short of encompassing all potential factual situations that may occur under the Act. When the Act does not specifically cover a particular event, we have interpreted it in a way that best accomplishes the legislative purpose. See *Foote v. O'Neill Packing, supra.* In *Kraft v. Paul Reed Constr. & Supply,* 239 Neb. 257, 475 N.W.2d 513 (1991), we stated that an exception to § 48-121(3) occurs when an injury to a scheduled member results in an unusual or extraordinary condition as to other members or other parts of the body. Under such circumstances, the claimant is entitled to compensation based on lost earning capacity as provided under § 48-121(1) or (2).

Where a statute has been judicially construed and that construction has not evoked an amendment, it is presumed that the

Legislature has acquiesced in the court's determination of the Legislature's intent. *Paulk v. Central Lab. Assocs.*, 262 Neb. 838, 636 N.W.2d 170 (2001). Since the Legislature has not amended § 48-121, we presume that it is in agreement with the court's interpretation of the statute as set forth in *Kraft*.

An employee's disability as a basis for compensation under § 48-121(1) and (2) is determined by the employee's diminution of employability or impairment of earning power or earning capacity and is not necessarily determined by a physician's evaluation and assessment of the employee's loss of bodily function. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002). Earning power, as used in § 48-121(2), is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the worker to earn wages in the employment in which he or she is engaged or for which he or she is fitted. *Frauendorfer v. Lindsay Mfg. Co., supra.*

In the case at bar, Zavala's back injury is considered to be a whole body injury. Impairments to the body as a whole are compensated in terms of loss of earning power or capacity. *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002). In order to determine the amount of compensation for Zavala's whole body injury under § 48-121(2), her loss of earning capacity must be assessed.

We conclude that when a worker sustains a scheduled member injury and a whole body injury in the same accident, the Act does not prohibit the court from considering the impact of both injuries in assessing the loss of earning capacity. In making such an assessment, the court must determine whether the scheduled member injury adversely affects the worker such that loss of earning capacity cannot be fairly and accurately assessed without considering the impact of the scheduled member injury upon the worker's employability. If the loss of earning capacity cannot be fairly and accurately assessed without such consideration, then the court is permitted to do so.

For example, when assessing the loss of earning capacity for a back injury, it may not be reasonable to ignore the impact that the loss of a leg would have upon the loss of earning capacity when

both injuries occurred in the same accident. The back injury does not increase the disability to the scheduled member, but the impact of the scheduled member injury should be considered when assessing the loss of earning capacity of the employee. The failure to do so would ignore the realities of the situation.

The Court of Appeals correctly held that when one work accident produces two injuries, one of which is scheduled and the other is unscheduled, it is permissible to consider the impact of the scheduled member injury when assessing loss of earning capacity if the scheduled member injury adversely affects the worker such that loss of earning capacity cannot be fairly and accurately assessed without such consideration.

Zavala sustained a whole body injury to her back and a scheduled member injury to her right upper extremity in the same accident, and therefore, the compensation court may consider her right upper extremity injury in determining the loss of earning capacity that occurred as a result of the single accident. Since we are unable to determine the effect of the trial judge's apparent failure to consider the impact of the scheduled member injury upon the loss of earning capacity assessment in her calculation of the awards of disability and vocational rehabilitation, we remand the cause for further consideration upon the record already made. We do not address the issue of whether a separate award for the scheduled member injury is permitted when considering the scheduled member injury with the whole body injury in the assessment of the loss of earning capacity.

## CONCLUSION

For the reasons set forth herein, we conclude that the trial judge was correct in her determination that the vocational counselor's opinion that Zavala was an odd-lot worker had been rebutted. Therefore, we reverse the decision of the Court of Appeals as to that issue.

We affirm that portion of the Court of Appeals' decision which concluded that in a work accident which produces two injuries (one scheduled and one unscheduled), it is permissible under the Act to consider the impact of the scheduled member injury when assessing loss of earning capacity if the scheduled member injury adversely affects the worker such that loss of

earning capacity cannot be fairly and accurately assessed without such consideration. We also affirm the Court of Appeals' decision that the question of vocational rehabilitation shall be reconsidered by the trial judge on the record made in light of the Court of Appeals' determination regarding "stacking."

AFFIRMED IN PART, AND IN PART REVERSED.

STEPHAN, J., not participating.