TERRANCE DUKES, APPELLANT, v. UNIVERSITY OF NEBRASKA, DOING BUSINESS AS UNIVERSITY OF NEBRASKA AT LINCOLN, APPELLEE.

679 N.W.2d 249

Filed May 18, 2004. No. A-03-982.

Rolf Edward Shasteen, of Shasteen, Linscott & Brock, P.C., for appellant.

Jon Bruning, Attorney General, and John R. Thompson for appellee.

INBODY, CARLSON, and MOORE, Judges.

INBODY, Judge.

## INTRODUCTION

Terrance Dukes appeals from the decision of the Workers' Compensation Court review panel affirming the trial court's decision to issue a credit to the University of Nebraska at Lincoln (UNL) for amounts paid in a lump-sum settlement against amounts owed to Dukes for his body as a whole injury. For the reasons set forth herein, we reverse the judgment of the review panel of the Workers' Compensation Court and remand the cause for proceedings consistent with this opinion.

## STATEMENT OF FACTS

Dukes began working for UNL on September 19, 1963. Dukes worked as a laboratory mechanic; his duties included building research equipment, spray systems, farm equipment, and furniture. Dukes also did some welding and sheet metal work. On April 5, 1994, Dukes was filling a low-pressure tank with air when the tank exploded. The explosion caused severe injuries to his right hand and arm. The injury made Dukes unable to perform

his duties at UNL, and he has not been able to work at any job since the accident. Dukes experiences constant pain in his arm, takes numerous medications for the pain, and has had trouble with sleeping and with his concentration and memory since the time of the accident. Dukes has also been treated for depression following his injury.

On March 6, 1998, Dukes and UNL entered into an agreement in which UNL would pay Dukes a lump sum for the injury to his right hand and arm. UNL agreed that Dukes had injured his right hand and arm during the course of his employment with UNL and agreed to pay Dukes the lump sum of $46,453.91. The agreement stipulates that after paying that sum, UNL would "be fully and forever released and discharged form [sic] any and all liability to [Dukes] regarding permanent partial disability to [Dukes'] member injury to his right-upper extremity. This agreement does not extend to [Dukes'] alleged body as a whole disability stemming from the accident of April 5, 1994." The agreement stipulates that $15,000 of the lump-sum amount would go to pay Dukes' attorney fees. At the time of the agreement, the parties agreed that Dukes had a remaining life expectancy of 24 years 4 months and that "the balance of $31,453.41 shall be paid to [Dukes] and shall represent a payment of weekly indemnity benefits over the projected term of [Dukes'] remaining life expectancy of 293 months at the rate of $107.35 per month or $24.81 per week." The agreement further provides that Dukes

> also claims that he is permanently and totally disabled as a result of psychological problems associated with his injury. Therefore, he asserts that he is not employable and would not benefit from rehabilitation vocational services. [UNL] denies that [Dukes] is totally and permanently disabled, but concedes that he is entitled to benefits relating to the 100% permanent partial disability to his right upper extremity. [Dukes] and [UNL] have agreed to settle the permanency claim regarding the member disability and to leave the body as a whole claim to be dealt with at a later time.

The Workers' Compensation Court approved the lump-sum settlement in an order dated March 9, 1998.

On July 17, 2000, Dukes filed a petition in the Workers' Compensation Court alleging that he suffered a psychological

injury as a result of his employment with UNL. With regard to the lump-sum settlement, Dukes claims in the petition:

[T]he agreement between [Dukes] and [UNL] set forth in the Application for Lump Sum Settlement, settled only the claim for injuries to [Dukes'] right arm. [UNL] has continued to pay weekly benefits thereafter to [Dukes] for his permanent and total psychiatric disability as caused by the physical injury to his right arm. [UNL] has also continued to pay for [Dukes'] monthly medication.

The petition alleges that "as a direct and proximate result of [Dukes'] injury on April [5], 1994, he has become permanently and totally disabled. That as a direct and proximate result of medication prescribed for his injury of 1994, [Dukes] has developed symptoms in his left arm." The petition also claims that UNL failed to pay Dukes the lump-sum settlement in a timely fashion; however, this claim was dropped prior to trial. In its answer, UNL admitted that Dukes had an "ongoing psychiatric disability" and that UNL had continued to pay benefits for that psychiatric injury; however, UNL claimed that Dukes had already received all the benefits to which he was entitled.

After a trial was held on the petition on May 30, 2002, the court found that Dukes was permanently and totally disabled as a result of a psychiatric condition that originated out of Dukes' April 5, 1994, accident. The trial court further found:

On March 6, 1998, [Dukes] entered into a lump sum settlement with [UNL] for payment of 100 percent loss of use of the right arm. The application for lump sum settlement states, "[Dukes] and [UNL] have agreed to settle the permanency claim regarding the member disability and to leave the body as a whole claim to be dealt with at a later time." The body as a whole injury, which would entitle [Dukes] to a loss of earning power award, is the psychiatric/psychological problem [Dukes] has as a result of the accident and injury. The only payment the lump sum settlement covered was the 100 [percent] loss of use of the right arm. The parties agreed in the lump sum settlement that the portion paid to [Dukes] (a sum of $24.81 per week) would be considered the weekly benefit. In addition thereto, was a fee paid to counsel for [Dukes]. If that fee is

prorated to a weekly benefit (as was the amount paid to [Dukes] for the 100 percent loss of use of the right arm), the weekly benefit would be $11.83. This means that there was total weekly benefit paid of $36.64 per week.

The court further found that at the time of the injury, Dukes' "average weekly wage . . . was $480.68. This would entitle [Dukes] to $320.25 per week." However, the court noted that the statutory maximum benefit Dukes could receive at the time of the injury was $265 per week; thus, the court held that Dukes was "entitled to $265.00 per week, and no more, for this injury."

Regarding the timing of Dukes' disability, the trial court specifically found that Dukes "was temporarily totally disabled from April 5, 1994, through December 20, 1996. On November 26, 1996, [a doctor] gave an opinion that [Dukes] was at maximum medical improvement. On December 20, 1996, [another doctor] gave a rating of 100 percent impairment of the right hand and upper extremity." The court further found that UNL should receive a credit for the lump-sum payment made to Dukes, despite the fact that UNL did not request such a credit in its answer to Dukes' petition or at trial. Specifically, the court found:

Beginning December 21, 1996, through April 19, 1998, [UNL] is to pay [Dukes] $265.00 per week for permanent total disability. There needs to be an adjustment for payments made after April 19, 1998, because [Dukes] received the lump sum settlement which, according to the application, is to be prorated over his lifetime. I cannot award a weekly benefit in the amount of $265.00 for permanent total disability when [Dukes] has already received an agreed upon amount of $36.64 per week for the rest of his life. The maximum amount I am allowed to award in total for any accident in 1994, no matter how many injuries arise from that one accident, is $265.00 per week.

. . . .

In this case, the weekly benefit cannot exceed $265.00 per week, and it is for this reason that I am giving [UNL] a credit by reducing the amount due after April 19, 1998, by $36.64 per week, because that amount has already been paid (in the lump sum settlement). The result is that beginning April 20, 1998, and for so long as [Dukes] shall remain

permanently totally disabled the weekly benefit due will be $228.36.

The court further ordered UNL to pay Dukes' current and future additional medical costs and to pay Dukes $863.53 for mileage.

Dukes timely appealed the trial court's decision to a review panel of the Workers' Compensation Court. On appeal, Dukes alleged that the credit given to UNL by the trial court was not in conformity with applicable Nebraska law, that the trial court lacked jurisdiction to allocate benefits that were previously paid pursuant to a lump-sum settlement, and that the credit given by the trial court was not relief sought by UNL. The review panel consolidated these issues into one: "whether the trial court erred by crediting lump sum payments made for a member injury against benefits owed for a body as a whole injury when both resulted from the same accident." The review panel noted:

> As the Nebraska Supreme Court has held that a party cannot recover more than the statutory maximum for injuries suffered in separate accidents . . . it would seem to logically follow that a similar prohibition attends multiple injuries incurred in the same accident. A "maximum" weekly benefit means what it implies.

The review panel found no authority to support Dukes' claim that the trial court lacked jurisdiction to credit UNL for the amount it paid in the lump-sum settlement for Dukes' arm injury against the amounts owed for the psychiatric injury. Ultimately, the review panel found none of Dukes' arguments persuasive, specifically holding:

> The trial court . . . credited the fictional weekly lifetime benefits for the scheduled injury against [Dukes'] entitlement for his whole body injury. [Dukes] cries foul and suggests, in essence, that he is entitled to more than the statutory limit of $265.00 per week. As noted, the panel finds the law to be quite clear regarding the maximum benefits payable per week for injuries sustained in a single accident. This legislative directive survives or supercedes any contrary agreement of the parties or alleged failure by a party to affirmatively request that the statute be implemented as written. [Dukes'] alleged errors are without merit.

The review panel further found that the trial court had committed plain error in its award. Specifically, the review panel found:

> By accepting or otherwise legitimizing the parties' agreement to characterize the lump sum payment as one made over [Dukes'] lifetime (calculated by the parties as 24 years and 4 months), the court conceivably awarded [Dukes] less than he might ultimately be due for his body as a whole injury. The credit applied by the court against [Dukes'] entitlement for his psychiatric condition could arguably extend beyond the aforementioned 24 years and 4 [months of] life expectancy settled upon by the parties in the [lump-sum settlement] document. . . . [T]he court permanently reduced [Dukes'] weekly entitlement for his whole body injury to $228.36 (making no referral to the 24 years and 4 months life expectancy period agreed to by the parties). If [Dukes] remains totally disabled and lives longer than the expectancy figure used by the parties, he will not receive that to which he is entitled. In other words, as drafted, the award provides that the credit against the statutory maximum of $265.00 per week (for [Dukes'] whole body injury) could continue beyond the life expectancy period envisioned by the parties. The court's award makes no provision for the real possibility that [Dukes'] total permanency could exceed the life expectancy period agreed to by the parties.
>
> This shortcoming serves to highlight perhaps the inherent difficulties in applying the credit in the manner found in the award. The better practice would appear to be one that gives full faith and effect to the statutory scheme in place at the time of injury. The panel suggests that [Dukes'] weekly entitlement for the subject injury (body as a whole/psychiatric condition) be established at $265.00 per week and made payable for so long as [Dukes] remains permanently and totally disabled from that injury. Those payments, however, would be due and owing only after [Dukes'] member injury disability entitlement is exhausted.

Accordingly, the review panel remanded the cause to the trial court for further consideration and findings relative to the amount and commencement of Dukes' award. Dukes has timely appealed to this court.

## ASSIGNMENTS OF ERROR

Dukes assigns, restated, that the review panel erred in (1) affirming the trial court's award of a credit in favor of UNL against Dukes' weekly permanent total disability award; (2) failing to find that UNL had waived its right to a credit, when UNL failed to raise the issue before the trial court; (3) finding that the trial court had jurisdiction to consider the effect of the previous lump-sum settlement on the benefits awarded for Dukes' psychiatric injury; and (4) holding that UNL was entitled to suspend the entire amount of its permanent total disability payments to Dukes until the lump-sum settlement amount had been recovered.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003).

The meaning of a statute is a question of law, and an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003).

## ANALYSIS

*Credit for Lump-Sum Settlement.*

Lump-sum settlements, in the context of workers' compensation, are governed by Neb. Rev. Stat. §§ 48-139 (Cum. Supp. 2002) and 48-140 and 48-141 (Reissue 1998). Section 48-139 provides in relevant part:

> Every such lump-sum settlement or agreement approved by order of the compensation court shall be final and conclusive unless procured by fraud. Upon paying the amount approved by the compensation court, the employer (1) shall be discharged from further liability on account of the injury or death, other than liability for the payment of future medical expenses if such liability is approved by the

compensation court on the application of the parties, and (2) shall be entitled to a duly executed release.

Section 48-140 provides:

All settlements by agreement of the parties with the approval of the Nebraska Workers' Compensation Court and all awards of compensation made by the compensation court, except those amounts payable periodically, shall be final and not subject to readjustment; *Provided*, no settlement shall be final unless it is in conformity with the Nebraska Workers' Compensation Act and approved by order of the compensation court pursuant to section 48-139.

Finally, § 48-141 provides in relevant part: "All amounts paid by an employer or by an insurance company carrying such risk, as the case may be, and received by the employee or his or her dependents by lump-sum payments, approved by order pursuant to section 48-139, shall be final . . . ."

 "It is well settled that when construing a statute, we must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it." *Rodriguez v. Monfort, Inc.*, 262 Neb. 800, 806, 635 N.W.2d 439, 445 (2001). "In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous." *Id.* "If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning." *Hobza v. Seedorff Masonry, Inc.*, 259 Neb. 671, 675, 611 N.W.2d 828, 831 (2000). "The Legislature enacted the Nebraska Workers' Compensation Act . . . in order to relieve injured workers from the adverse economic effects caused by a work-related injury or occupational disease." *Zavala v. ConAgra Beef Co.*, 265 Neb. at 197, 655 N.W.2d at 700 (2003). "It is in light of this beneficent purpose that we have consistently given the [a]ct a liberal construction to carry out justly the spirit of the [a]ct." *Id.*

 The language used in §§ 48-139, 48-140, and 48-141 is both plain and unambiguous; all three statutes indicate that in the area of workers' compensation, lump-sum settlements are "final." Section 48-139 indicates that such settlements are "conclusive

unless procured by fraud," and § 48-140 provides that such settlements are "not subject to readjustment." This statutory language indicates not only that these settlements cannot be modified in the future, but also that such settlements cannot be considered when determining future workers' compensation awards. A different reading of the statutory language would be contrary to the purpose of the Nebraska Workers' Compensation Act, which, as stated previously, was meant to relieve injured workers like Dukes from the adverse economic effects caused by work-related injuries or occupational diseases.

■ UNL argues that Neb. Rev. Stat. §§ 48-121 (Cum. Supp. 2002) and 48-121.01 (Reissue 1998) dictate that the lump-sum settlement between UNL and Dukes must be considered when determining Dukes' proper workers' compensation award, because neither statute contains "any language qualifying the use of the statutory maximum" of $265 per week. Brief for appellee at 12. UNL states, "[T]herefore, compensation is simply limited to $265.00 according to the plain, direct, and unambiguous meaning of the statutory words and further judicial inquiry is not required." *Id.* This argument might be persuasive were it proper to consider the settlement amount when determining the appropriate amount of Dukes' award. Although we are unable to find any cases directly on point, the Nebraska Supreme Court, in determining that waiting-period penalties apply to the entire amount of a delinquent lump-sum settlement, rejected the employer's argument that penalties should be assessed on the amount of periodic payments which would have accrued as of the date of the court's approval of the lump-sum settlement. In reaching this conclusion, the court referred to § 48-139, which provides that lump-sum agreements approved by the court are final and conclusive. *Hollandsworth v. Nebraska Partners*, 260 Neb. 756, 619 N.W.2d 579 (2000). Nothing in §§ 48-139, 48-140, or 48-141 allows for a credit to be given to an employer when the parties have entered into a lump-sum settlement for one injury and have reserved the dispute on another alleged injury that happened at the same time. "As a statutorily created court, the Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred upon it by statute." *Dawes v. Wittrock Sandblasting & Painting,*

266 Neb. 526, 550, 667 N.W.2d 167, 189 (2003). While it is true that neither § 48-121 nor § 48-121.01 contain language qualifying the use of the statutory maximum, the plain meanings of §§ 48-139, 48-140, and 48-141 dictate that lump-sum settlements like that between UNL and Dukes cannot be considered in determining future workers' compensation awards, because the settlements are "final." Thus, the lump-sum settlement amount has no bearing on the statutory maximum award in this case, and such amount cannot be used to decrease the amount of benefits awarded. We find that the review panel erred when it affirmed the trial court's determination that UNL should receive credit for the lump-sum payment it made to Dukes for his member injury, and accordingly, we reverse the judgment of the review panel of the Workers' Compensation Court.

*Dukes' Additional Assignments of Error.*

Given our above finding that the judgment of the review panel of the Workers' Compensation Court must be reversed, we need not address Dukes' further assignments of error.

## CONCLUSION

We find that the review panel erred when it found that the trial court properly credited amounts UNL paid to Dukes in a lump-sum settlement against the amounts UNL owed to Dukes for his permanent and total disability. Accordingly, we reverse the judgment of the review panel of the Workers' Compensation Court and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.