AMANDA MADLOCK, APPELLANT, V.
SQUARE D COMPANY, APPELLEE.
695 N.W.2d 412

Filed April 22, 2005.   No. S-04-758.

Timothy S. Dowd, of Dowd, Dowd & Howard, for appellant.

Brenda S. Spilker and Tracy L. Stoehr, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Amanda Madlock appeals from the judgment of a Workers' Compensation Court review panel that reversed, in part, an award entered by the trial court. The review panel found that because Madlock's foot injury (a scheduled member injury) was taken into consideration in determining her loss of earning capacity, the trial court's award of separate benefits for the member injury constituted an impermissible double recovery of benefits.

## SCOPE OF REVIEW

■ With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Hobza v. Seedorff Masonry, Inc.*, 259 Neb. 671, 611 N.W.2d 828 (2000).

## FACTS

On September 7, 1999, while employed by the Square D Company (Square D), Madlock was carrying a 60- to 70-pound box of circuit breakers, when the handles on the box broke and the box landed on her right foot. The parties stipulated that Madlock's injury resulted from an accident arising out of and in the course of her employment; that she suffered an injury to her right foot resulting in a permanent partial impairment of 22 percent; that she was earning an average weekly wage of $694.08 at the time of the accident; and that all benefits owed to her as a result of the foot injury, including disability and medical benefits, had been paid by Square D. The parties disagreed concerning whether back problems Madlock experienced were causally related to the accident. Madlock claimed that her gait was altered because of the foot injury, resulting in a low-back condition.

Dr. John McClellan of the Nebraska Spine Center opined that Madlock had persistent lumbar back pain caused by the residual effects of the injury to her right foot. Dr. Denise Vosik stated that the residual effects of the foot injury resulted in an injury to the body as a whole and that the chronic and recurrent sacroiliac dysfunction experienced by Madlock was caused, or at least significantly aggravated, by the work accident.

Square D offered the report of Dr. Christopher Anderson, which report stated that it was "medically possible that [Madlock's] right foot injury may have caused some secondary gait deviations, which altered the . . . biomechanics through her back, yet not to a severe degree that would cause multilevel lumbar degenerative disc disease and annular tears." Anderson opined that those conditions were "more than likely" preexistent to the foot injury, noting that Madlock was hospitalized in April 1986 for similar low-back pain.

In determining Madlock's loss of earning capacity, the trial court considered the impact of the member injury and concluded that a fair and accurate assessment of Madlock's loss of earning

capacity could not be made absent the inclusion of the limitations flowing from the member injury. The trial court noted: "The impact and adverse effect of the scheduled injury upon the plaintiff's whole body injury is evident as one considers the fact that even the medical experts could not segregate the two."

The trial court found that the medical evidence documented the existence of an altered gait due to the right foot injury, that Madlock had met and carried her burden of proof on the issue of causation, and that Madlock had suffered a 10-percent loss of earning capacity. The trial court awarded her $46.26 per week for each week from and after the date of the accident for the statutorily mandated period of entitlement less those weeks during which she received or was entitled to temporary total and temporary partial disability benefits.

The trial court next addressed whether a separate award or recovery for the member injury was permitted and whether Square D was entitled to a credit or offset against the loss of earning capacity award for the moneys already paid for the member injury. The trial court reasoned that

> [w]hile it would be unjust to permit a claimant a "double recovery," there are always exceptions that must be accommodated. Such is the circumstance presented in this case. The plaintiff has two distinct injuries (foot and low back). While one resulted from the other, they are, nonetheless, distinct to the extent that they present an impairment to plaintiff not only in combination but individually.

The trial court found that the member injury continued to operate as an independent source of restriction and limitation, noting that " '[w]hile sitting to do her work, [Madlock] noticed that the swelling would become worse and as a result,' " she would have to elevate her leg. The trial court stated:

> The apparent tendency of the plaintiff's foot to swell and become painful and thus interfere with ambulation clearly is a condition unrelated to the subsequent back injury and exists solely because of the member injury itself. To totally blend or integrate that member loss into the body as a whole injury is to ignore the reality of plaintiff's full loss.
>
> . . . The court is sufficiently satisfied that plaintiff's foot impairment is significant enough to not only add to plaintiff's

overall loss of earning capacity but to create impairment for plaintiff independently and in addition to that loss.

The award entered by the trial court included $462.72 per week for 24½ weeks for temporary total disability due to the member injury; $4,248.65 for varying periods of temporary partial disability; $462.72 for 47.3 weeks for a 22-percent permanent impairment to Madlock's right foot; $462.72 per week for 8 weeks for temporary total disability due to the low-back injury; and $46.27 per week for a 10-percent loss of earning capacity for a period of 238⅝ weeks.

Square D sought review by a three-judge panel, asserting that the trial court erred in awarding benefits for a 22-percent permanent partial impairment of the right foot in addition to awarding benefits for a 10-percent loss of earning capacity, because the impact of the member injury was already considered in calculating the loss of earning capacity award.

The review panel affirmed the trial court's order except that it reversed the finding that Madlock was entitled to benefits for a member injury in addition to benefits for a loss of earning capacity when the member impairment was considered in assessing the loss of earning capacity. The review panel concluded that Madlock had sustained a member injury which ultimately led to a back injury and that the back injury was an extraordinary or unusual result which entitled her to an award for loss of earning capacity. The review panel determined that the trial court had properly considered the impact of the member injury in awarding loss of earning capacity, but that it was error to award weekly benefits for a 22-percent member impairment. It concluded that this award resulted in a double recovery for the member injury, in that Madlock would receive both scheduled member benefits and an increase in loss of earning capacity. The review panel reversed that portion of the award providing Madlock with benefits for a member injury in addition to a loss of earning capacity. Madlock appeals.

## ASSIGNMENT OF ERROR

Madlock asserts that the three-judge review panel erred in reversing that portion of the trial court's award of benefits for a 22-percent permanent partial impairment of the right foot.

## ANALYSIS

The issue is whether a worker may recover benefits for both a scheduled member injury and a whole body injury resulting in loss of earning capacity when the member injury was taken into consideration in determining the loss of earning capacity. The issue presents a question of law rather than one of fact. With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Hobza v. Seedorff Masonry, Inc.*, 259 Neb. 671, 611 N.W.2d 828 (2000).

In this case, the review panel stated:

> We believe [the trial court's] award of scheduled member benefits after specifically including the limitations imposed upon the plaintiff by her member injury in assessing loss of earning capacity to be in error. . . . In this instance, the plaintiff sustained a member injury which ultimately lead [sic] to a back injury, an extraordinary or unusual result, entitling her to an award for loss of earning capacity. We believe that [the trial court] properly considered the impact of the member injury in making his award of loss of earning capacity, but find that it was error for him to award in addition the weekly indemnity benefits for a 22 percent member impairment. Such result leads to a double recovery of benefits for the member injury. Not only does the plaintiff receive an increase in loss of earning capacity but then also receives the scheduled member benefits as well.

The panel reversed that portion of the award which provided Madlock $462.72 per week for 47.3 weeks for a 22-percent permanent impairment to her right foot.

Neb. Rev. Stat. § 48-121 (Reissue 2004) provides for compensation for three categories of job-related disabilities: (1) total disability, (2) partial disability, and (3) "schedule" injuries to specific parts of the body. See *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003), citing *Jeffers v. Pappas Trucking, Inc.*, 198 Neb. 379, 253 N.W.2d 30 (1977). In *Zavala*, we discussed whether a scheduled member injury should be considered in addition to a whole body injury in calculating loss of earning capacity when both injuries resulted from the same accident. We noted that § 48-121 does not specify how compensation is to be

established when a worker suffers both a scheduled member injury and a whole body injury as a result of a single accident.
We stated:

> [W]hen a worker sustains a scheduled member injury and a whole body injury in the same accident, the [Nebraska Workers' Compensation] Act does not prohibit the court from considering the impact of both injuries in assessing the loss of earning capacity. In making such an assessment, the court must determine whether the scheduled member injury adversely affects the worker such that loss of earning capacity cannot be fairly and accurately assessed without considering the impact of the scheduled member injury upon the worker's employability. If the loss of earning capacity cannot be fairly and accurately assessed without such consideration, then the court is permitted to do so.

*Zavala*, 265 Neb. at 199, 655 N.W.2d at 702.

In *Jeffers*, 198 Neb. at 384, 253 N.W.2d at 33, we noted the three categories of job-related disabilities identified in § 48-121 and stated: "[L]osses in bodily function, so far as subdivisions (1) and (2) are concerned, are important only insofar as they relate to earning capacity and employability." For claims which fall under subdivision (3), loss of earning capacity is not material. *Jeffers, supra.* The Legislature intended to establish the amount of benefits for loss of specific members under subdivision (3) without regard to the extent of any subsequent disability. *Id.* However, the Legislature has never indicated whether a worker may receive compensation for both a scheduled member injury and a whole body injury when the member injury was considered in assessing the whole body injury and subsequent loss of earning capacity.

It is not disputed that Madlock's back injury was an unusual or extraordinary condition that developed following the scheduled member injury. However, Square D claims that Madlock should be entitled to compensation for lost earning capacity based on the whole body injury only and not given an additional award based on permanent partial impairment of the right foot.

The issue presented in the case at bar has been considered in other jurisdictions. Obviously, the result in each case depended upon the workers' compensation law involved and the particular facts and circumstances of the case. In *Providence Washington*

*Ins. Co. v. Grant*, 693 P.2d 872 (Alaska 1985), the employee fell from a ladder, injuring his back, knee, ankle, and ribs. Following an award of $74.79 per week, the employee petitioned for a redetermination, arguing that he was entitled to separate awards for his back, knee, and foot injuries. The workers' compensation board agreed. On appeal to the Alaska Supreme Court, the employer argued that the approach taken by the board constituted a double recovery because the employee was awarded compensation for the scheduled disabilities of his knee and foot separately and his loss of earning capacity resulting from the scheduled injuries was incorporated into the award for his back injury. The employer argued that the employee should not receive both awards under such circumstances.

The court stated:

> We recognize that this approach could result in a double recovery if the loss of earning capacity resulting from the scheduled injuries were used to determine the employee's compensation for an unscheduled disability. To avoid this, when awarding the claimant for an unscheduled injury, the board must attempt to separate the loss of earning capacity resulting from scheduled disabilities from the loss of earning capacity resulting from the unscheduled injury.

*Id.* at 876.

The court determined that the board could compensate for the back injury based upon the total loss of earning capacity only if the loss of earning capacity resulting from the foot and knee injuries could not be severed from the loss of earning capacity resulting from the back injury. In such a situation, the employee would be entitled to an award based on his total loss of earning capacity resulting from the fall plus an award for his scheduled injuries.

In *Farrens Tree Surgeons v. Winkles*, 334 So. 2d 569, 572 (Fla. 1976), the court noted the rule of law enunciated by the then Florida Industrial Relations Commission in *Grao v. Fountainebleau Hotel*, I.R.C. Order 2-2543 (Mar. 11, 1974), *cert. denied* 300 So. 2d 900 (Fla. 1974):

> " 'When there are *two distinct injuries*, one to a scheduled member and one to the body as a whole, even if both are incurred during the same accident, they may both be compensated for separately as long as the injury to the body

as a whole is not *the result of the injury to the scheduled member. . . .* [I]n determining the loss of wage earning capacity, *all* injuries, including scheduled injuries, must be considered. . . .' "

(Emphasis in original.)

The Judge of Industrial Claims was directed to determine three amounts: the "scheduled recovery," the separate anatomical injury to the body as a whole, and loss of wage earning capacity. The award was to be the greater of the total of the scheduled injury plus the anatomical whole body injury not resulting from the scheduled injury, or the loss of wage earning capacity taking into consideration all of the injuries. *Farrens Tree Surgeons, supra.*

In *Miller v. Lauridsen Foods, Inc.*, 525 N.W.2d 417, 420 (Iowa 1994), the court held: "If an employee suffers both an injury to a scheduled member and also to part of the body not included in the schedule, then the resulting injury is compensated on the basis of an unscheduled injury." See, also, *Honeywell v. Allen Drilling Co.*, 506 N.W.2d 434 (Iowa 1993); *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12 (Iowa 1993).

The court in *Kellerman v. Food Lion, Inc.*, 929 S.W.2d 333, 336 (Tenn. 1996), stated: "It is the rule in Tennessee that where an injury is to more than one member, one of which is scheduled and the other of which is not scheduled, benefits are allowable on the basis of percentage of the body as a whole." See, also, *Continental Ins. Companies v. Pruitt*, 541 S.W.2d 594 (Tenn. 1976).

In the case at bar, the whole body injury cannot be separated from the scheduled member injury. Both arose from the same accident. If Madlock had not injured her foot, she would not have sustained a back injury that was compensable under Nebraska's workers' compensation statutes. Under these circumstances, the trial court was required to, and did, consider the scheduled member injury in awarding benefits because Madlock's loss of earning capacity could not be fairly and accurately assessed without such consideration.

Madlock's scheduled member injury was an essential factor in determination of the award for loss of earning capacity. By also awarding separate benefits for the member injury, the trial court allowed Madlock a greater recovery than that to which she was entitled. Thus, the review panel correctly determined that the trial

court had erred in awarding Madlock additional benefits for the scheduled member injury.

■ We therefore hold that when a whole body injury is the result of a scheduled member injury, the member injury should be considered in the assessment of whole body impairment. Under such circumstances, the trial court should not enter a separate award for the member injury in addition to the award for loss of earning capacity. To allow both awards creates an impermissible double recovery.

## CONCLUSION

The judgment of the review panel is affirmed.

AFFIRMED.

McCORMACK, J., not participating.