SANTANA RODRIGUEZ, APPELLANT, V. HIRSCHBACH MOTOR LINES
AND DAKOTA TRUCK UNDERWRITERS, APPELLEES.

707 N.W.2d 232

Filed December 9, 2005.    No. S-05-141.

Tony Brock, of Shasteen, Brock & Scholz, P.C., for appellant.

Brenda S. Spilker and Christopher J. Walker, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The claimant in this workers' compensation action, Santana Rodriguez, suffered injuries to his neck, shoulder, knees, and back, in addition to severe depression, as a result of a work-related accident. Rodriguez was found to have reached maximum medical improvement with respect to all of those injuries except his knees. The primary issue presented in this case is whether the Workers' Compensation Court erred in concluding that Rodriguez had reached maximum medical improvement with respect to some but not all of his injuries, and denying permanent disability benefits for those injuries, instead of waiting until all his injuries could be considered together in assessing Rodriguez' loss of earning power.

## BACKGROUND

Rodriguez was employed by the defendant Hirschbach Motor Lines (Hirschbach) as a truckdriver. On December 28, 2001, Rodriguez had a load of beer kegs on pallets, which were being unloaded by forklift. The kegs fell on Rodriguez, and he was injured. Rodriguez eventually filed a claim for workers' compensation benefits.

On January 23, 2002, Rodriguez was treated for complaints of left shoulder, neck, and bilateral knee pain. Rodriguez continued to receive medical treatment and, on August 29, underwent surgery on his left shoulder for rotator cuff tears. Rodriguez' physician opined that Rodriguez' knees were injured in the accident, but Hirschbach's expert opined that Rodriguez had a degenerative joint disease and that the accident was not a significant and contributing cause of his condition. Hirschbach denied

surgery for Rodriguez' knees. With respect to his neck and back pain, Rodriguez was found to have herniated disks on his cervical and lumbar spine, but surgery was not indicated because of Rodriguez' obesity. Rodriguez was also examined for depression in October and found to be significantly depressed, secondary to his work-related injuries. In July 2003, Rodriguez' doctors concluded he had reached "maximum medical improvement" for his shoulder, neck, and back injuries.

The case came on for hearing before the single judge on July 28, 2003. The parties stipulated that Rodriguez' accident arose out of and in the course of his employment and that Rodriguez was injured, but disputed the nature and extent of the injuries. The single judge concluded that Rodriguez' knee injuries and depression were the result of his work-related accident. The single judge found that Rodriguez had reached maximum medical improvement with respect to his neck, back, shoulder, and psychological injuries, but that he had not reached maximum medical improvement with respect to his bilateral knee injuries. Hirschbach was ordered to pay for Rodriguez' knee surgeries and to pay medical benefits with respect to his other injuries. The single judge determined that Rodriguez had suffered no permanent disability as a result of his neck, back, shoulder, and psychological injuries. Therefore, the single judge entered an award maintaining temporary total disability benefits for the injury to Rodriguez' knees, but denying permanent disability benefits.

Rodriguez also asked the single judge to order Hirschbach to pay for gastric bypass surgery to help achieve the weight loss necessary to permit surgery to his cervical and lumbar spine. The single judge determined that the record did not establish that the surgery was reasonable and medically necessary at that time and denied Rodriguez' request.

Rodriguez appealed to the review panel of the Workers' Compensation Court, which affirmed the single judge's award. Rodriguez argued that pursuant to our decision in *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003), when a worker sustains a scheduled member injury and a whole body injury in the same accident, the Workers' Compensation Court may consider the impact of both injuries in assessing the worker's loss of earning capacity. See, also, *Madlock v.*

*Square D Co.*, 269 Neb. 675, 695 N.W.2d 412 (2005) (when whole body injury results from scheduled member injury, member injury should be considered in assessment of whole body impairment). Rodriguez argued that it was premature for the single judge to deny recovery for a whole body injury before Rodriguez reached maximum medical improvement with respect to his knee injuries. However, the review panel determined that *Zavala* was permissive, and while the injuries could be considered together, it was not required. The review panel also affirmed the denial of Rodriguez' request for gastric bypass surgery. Rodriguez timely appealed, and we granted his petition to bypass the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

Rodriguez assigns that the Workers' Compensation Court erred in (1) holding that it was required to determine his loss of earning power with respect to his neck, back, shoulder, and psychological injuries because of physicians' opinions that he had reached maximum medical improvement with respect to those injuries; (2) finding that he had reached maximum medical improvement and his temporary total disability had ceased; (3) failing to award permanent total disability benefits; and (4) refusing to find that his proposed gastric bypass surgery was necessary and reasonable to alleviate his neck and back pain.

## STANDARD OF REVIEW

■ Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Vega v. Iowa Beef Processors, ante* p. 255, 699 N.W.2d 407 (2005).

■ Generally, whether a workers' compensation claimant has reached maximum medical improvement is a question of fact. *Cox v. Fagen Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996). Whether medical treatment is reasonable or necessary to treat a workers' compensation claimant's compensable injury is a question of

fact. See, *Zessin v. Shanahan Mechanical & Elec.*, 251 Neb. 651 558 N.W.2d 564 (1997); *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Davis v. Goodyear Tire & Rubber Co.*, 269 Neb. 683, 696 N.W.2d 142 (2005).

## ANALYSIS

### MAXIMUM MEDICAL IMPROVEMENT

Rodriguez' first two assignments of error require us to consider the same question: whether Rodriguez had reached maximum medical improvement as of July 2003. Under Neb. Rev. Stat. § 48-121 (Reissue 2004), a workers' compensation claimant may receive permanent or temporary workers' compensation benefits for either partial or total disability. "Temporary" and "permanent" refer to the duration of disability, while "total" and "partial" refer to the degree or extent of the diminished employability or loss of earning capacity. See, *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. 568, 604 N.W.2d 396 (2000); *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990). Temporary disability ordinarily continues until the claimant is restored so far as the permanent character of his or her injuries will permit. *Allen v. Department of Roads and Irrigation*, 149 Neb. 837, 32 N.W.2d 740 (1948). Compensation for temporary disability ceases as soon as the extent of the claimant's permanent disability is ascertained. See *Uzendoski v. City of Fullerton*, 177 Neb. 779, 131 N.W.2d 193 (1964). In other words, temporary disability should be paid only to the time when it becomes apparent that the employee will get no better or no worse because of the injury. *Id.*

We have used the term "maximum medical improvement" to describe the point of this transition from temporary to permanent disability. "Once a worker has reached maximum medical improvement from a disabling injury and the worker's permanent disability and concomitant decreased earning capacity have been determined, an award of permanent disability is appropriate." *Foote v. O'Neill Packing*, 262 Neb. 467, 474, 632 N.W.2d 313, 320 (2001). As Professor Larson explains:

Temporary total . . . and temporary partial [disability benefits] occasion relatively little controversy, since they are ordinarily established by direct evidence of actual wage loss. In the usual industrial injury situation, there is a period of healing and complete wage loss, during which . . . temporary total is payable. This is followed by a recovery, or stabilization of the condition, and probably resumption of work, and no complex questions ordinarily arise.

The commonest question is when does the "healing period" end and "stabilization" occur? The answer to this question—which is sometimes phrased as "when has maximum medical improvement (MMI) been reached?" or "when has the condition become stationary?"—determines in most states when temporary benefits cease and when the extent of permanent disability can be appraised, for purposes of making either a permanent partial or a permanent total award.

4 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 80.03[2] at 80-5 to 80-7 (2005). Simply stated, when an injured employee has reached maximum medical improvement, any remaining disability is, as a matter of law, permanent. See, *Yarns v. Leon Plastics, Inc.*, 237 Neb. 132, 464 N.W.2d 801 (1991); *Heiliger, supra*; *Snyder v. IBP, inc.*, 235 Neb. 319, 455 N.W.2d 157 (1990); *Briggs v. Consolidated Freightways*, 234 Neb. 410, 451 N.W.2d 278 (1990); *Musil v. J.A. Baldwin Manuf. Co.*, 233 Neb. 901, 448 N.W.2d 591 (1989); *Gardner v. Beatrice Foods Co.*, 231 Neb. 464, 436 N.W.2d 542 (1989); *Kleiva v. Paradise Landscapes*, 227 Neb. 80, 416 N.W.2d 21 (1987); *Aldrich v. ASARCO, Inc.*, 221 Neb. 126, 375 N.W.2d 150 (1985).

These basic principles, however, do not expressly resolve the question presented here: whether maximum medical improvement, for purposes of deciding when a claimant's disability has become permanent, is determined by reference to the date of healing for each of the injuries that result from an accident, or by reference to the date on which all of the claimant's injuries from the accident have reached maximum recovery. The Workers' Compensation Court applied the former rule in this case, but we conclude the latter rule is more consistent with our workers'

compensation jurisprudence, statutory scheme, and general principles of workers' compensation law.

To begin with, we have consistently held that a workers' compensation claimant should not receive temporary disability benefits upon reaching maximum medical improvement. See, *Gibson v. Kurt Mfg.*, 255 Neb. 255, 583 N.W.2d 767 (1998); *Yarns, supra*; *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990). A given condition cannot at one and the same time be both temporary and permanent. *Yarns, supra*. It is the intent of the Nebraska Workers' Compensation Act that the employer pay permanent disability benefits as determined, if any, as soon as possible after maximum medical improvement has been reached. See *Gibson, supra*. But the Workers' Compensation Court's reasoning in this case would result in a claimant's being potentially entitled to simultaneous permanent and temporary disability benefits resulting from the same accident—a result that is inconsistent with established precedent. See *id*. See, also, *Rayhall v. Akim Co., Inc.*, 263 Conn. 328, 819 A.2d 803 (2003) (holding that temporary incapacity benefits should be awarded until plaintiff attains permanency with respect to each of multiple injuries).

Furthermore, as in this case, it may be difficult, if not impossible, to ascertain a claimant's true permanent disability when not all of the claimant's disabling injuries have reached maximum healing. We recognized this principle in *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 199, 655 N.W.2d 692, 702 (2003), in which we concluded that when a worker sustains a scheduled member injury and a whole body injury in the same accident, the Nebraska Workers' Compensation Act

> does not prohibit the court from considering the impact of both injuries in assessing the loss of earning capacity. In making such an assessment, the court must determine whether the scheduled member injury adversely affects the worker such that loss of earning capacity cannot be fairly and accurately assessed without considering the impact of the scheduled member injury upon the worker's employability. If the loss of earning capacity cannot be fairly and accurately assessed without such consideration, then the court is permitted to do so.

The reason that the date of maximum medical improvement is legally significant is that the degree of a claimant's permanent disability can be ascertained only when the claimant's medical condition will not improve. *Zavala*, however, rests on the principle that determination of a claimant's permanent disability may require the court to consider the effect of different injuries that occurred in the same accident. As we explained in *Zavala*, 265 Neb. at 199-200, 655 N.W.2d at 702,

> when assessing the loss of earning capacity for a back injury, it may not be reasonable to ignore the impact that the loss of a leg would have upon the loss of earning capacity when both injuries occurred in the same accident. The back injury does not increase the disability to the scheduled member, but the impact of the scheduled member injury should be considered when assessing the loss of earning capacity of the employee. The failure to do so would ignore the realities of the situation.

Consequently, if the date of maximum medical improvement is the date upon which the claimant's permanent disability is supposed to be ascertainable, it makes little sense to assign a claimant a date of maximum medical improvement upon which, due to other injuries, the claimant's permanent disability cannot be fairly assessed. "When multiple conditions prevent a claimant's return to the former position of employment, it is imperative that a permanency determination include consideration of all allowed conditions." *State ex rel. Tilley v. Indus. Comm.*, 78 Ohio St. 3d 524, 526, 678 N.E.2d 1392, 1394 (1997) (holding that claimant had not reached maximum medical improvement because not all medical conditions were considered).

In other words, even if medical evidence establishes that a claimant's different injuries have different dates of maximum medical recovery, the legally significant date—the date of maximum medical improvement for purposes of ending a workers' compensation claimant's temporary disability—is the date upon which the claimant has attained maximum medical recovery from *all* of the injuries sustained in a particular compensable accident. See, e.g., *Rayhall v. Akim Co., Inc.*, 263 Conn. 328, 819 A.2d 803 (2003); *State ex rel. Tilley v. Indus. Comm., supra*; *Hammer v. Mark Hagen Plumbing & Heating*, 435 N.W.2d 525

(Minn. 1989); *Halsey v. Dillard's, Inc.*, 897 So. 2d 1142 (Ala. Civ. App. 2004); *Bracke v. Baza'r*, 78 Or. App. 128, 714 P.2d 1090 (1986); *Mora v. Max Bauer Meat Packing, Inc.*, 378 So. 2d 119 (Fla. App. 1980). We, therefore, hold that a claimant has not reached maximum medical improvement until all the injuries resulting from an accident have reached maximum medical healing. There is no provision in Nebraska law for "partial maximum medical improvement."

We recognize that there may be circumstances in which a claimant's permanent disability may be ascertainable even though not all of the claimant's injuries have reached maximum medical healing. For instance, where it is apparent that one injury of multiple injuries has reached maximum medical healing and will render a claimant permanently and totally disabled, it may be possible to award permanent total disability benefits even before the claimant reaches maximum medical healing with respect to all the injuries resulting from an accident. See, e.g., *State, ex rel. Galion Mfg., v. Haygood*, 60 Ohio St. 3d 38, 573 N.E.2d 60 (1991). Here, however, it is apparent from the record that Rodriguez' knee injuries had not, at the time of the hearing before the single judge, reached maximum medical healing. On the record before us, the evidence was insufficient to conclude that Rodriguez had reached maximum medical improvement, or that the extent of Rodriguez' permanent disability, if any, could be ascertained without considering the effect of his knee injuries. Thus, the Workers' Compensation Court erred in concluding that Rodriguez had reached maximum medical improvement, and its determination regarding permanent disability benefits was premature.

This conclusion is dispositive of Rodriguez' first three assignments of error. For the reasons stated above, Rodriguez is correct in contending that the Workers' Compensation Court erred in finding that he had reached maximum medical improvement with respect to some of his injuries, but not others. But for those same reasons, Rodriguez' third assignment of error, that the single judge erred in not awarding permanent total disability benefits, is without merit. Since we have concluded that the record, as presented, does not permit the fair assessment of Rodriguez' permanent disability, the court did not err in failing to award

such benefits; rather, the court should have deferred deciding whether or not Rodriguez was entitled to permanent disability benefits until he reached maximum medical recovery with regard to all injuries resulting from his work-related accident.

## GASTRIC BYPASS SURGERY

Rodriguez' final assignment of error is that the single judge erred in denying his request for gastric bypass surgery. The single judge concluded that there was insufficient evidence in the record to prove that gastric bypass surgery was medically necessary. Rodriguez argues that such surgery was medically necessary, because his weight precluded him from obtaining surgery to correct injuries resulting from his accident. He bases this argument primarily on the opinion of one of his physicians, who concluded there was no "perfect solution" for Rodriguez' back problems, but that "it would be [the physician's] opinion [that Rodriguez obtain] a gastric stapling so that he may at some point undergo surgical correction." Rodriguez' psychologist also opined that weight loss "surgery may be a consideration, because traditional weight control programs are not very successful in individuals with this degree of obesity."

However, the single judge denied this request. The judge noted that the medical evidence established several medical conditions that contraindicated surgery, including coronary artery disease and diabetes, placing Rodriguez at risk of emboli syndrome, pulmonary embolism, and deep vein thrombosis. But the single judge also noted that future medical benefits had been awarded and that the record "at this point" did not establish that the surgery was necessary to treat the claimant's work-related injuries.

We recognize the generally accepted principle that in some circumstances, a medically necessary weight loss program may be compensable. See, e.g., *State ex rel. Miller v. Indus. Comm.*, 71 Ohio St. 3d 229, 643 N.E.2d 113 (1994). See, also, *Hopp v. Grist Mill*, 499 N.W.2d 812 (Minn. 1993) (finding sufficient evidence to support trial court's determination that gastric bypass surgery was necessary to relieve effects of claimant's compensable injury). But here, what little evidence is present in the record suggests that to the extent gastric bypass surgery would be therapeutic, it would not be to directly relieve the effects of Rodriguez'

injury. Rather, an additional level of speculation is present, since the surgery is simply intended to make Rodriguez more amenable to more surgery that, in turn, might better his condition. Compare *State ex rel. Williams v. Cincinnati Country Club*, 83 Ohio St. 3d 284, 699 N.E.2d 505 (1998). Cf. *Castro v. Gillette Group, Inc.*, 239 Neb. 895, 479 N.W.2d 460 (1992) (affirming denial of medical treatment where physician's testimony was couched in terms of possibility and hopefulness).

Given the sparseness of the record concerning whether gastric bypass surgery was medically reasonable and necessary to treat Rodriguez' compensable injuries, and whether gastric bypass surgery would even suffice to make Rodriguez a candidate for further surgery to treat his compensable injuries, we cannot say the single judge was clearly wrong in determining that there was not sufficient evidence at this time to establish that gastric bypass surgery was necessary to the treatment of Rodriguez' work-related injuries. Rodriguez' final assignment of error is without merit.

## CONCLUSION

The Workers' Compensation Court erred in concluding that Rodriguez had reached maximum medical improvement and, therefore, also erred in making a determination as to Rodriguez' permanent disability. The judgment of the Workers' Compensation Court is reversed to that extent. The court's denial of Rodriguez' request for gastric bypass surgery is affirmed, as are those aspects of the award not contested on appeal. This cause is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.