277 Neb. 171
KAREN A. BISHOP, APPELLANT,
v.
SPECIALITY FABRICATING CO., A CORPORATION, APPELLEE.
No. s-08-527.
Supreme Court of Nebraska.
Filed February 13, 2009.
James F. Fenlon, P.C., for appellant.
Bradley D. Shidler, of Hotz, Weaver, Flood, Breitkreutz & Grant, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
This appeal from the Nebraska Workers' Compensation Court raises the issue of whether a scheduled member injury may be separately compensated when it causes a psychological injury for which the worker receives nonscheduled benefits based upon loss of earning power. We agree with the compensation court that a separate award is not permitted in these circumstances.

BACKGROUND
Karen A. Bishop was employed by Speciality Fabricating Co. (Speciality) at the time of her injury on April 29, 2003. A grinder she was using to bore a hole in an I-beam slipped and cut her left wrist, injuring a tendon and nerve. Bishop underwent two surgical procedures to repair damage caused by this scheduled member injury.[1]
After being released for work by her physician, Bishop returned to her job at Speciality but experienced difficulty working around industrial machinery. She testified that any noise from the machinery made her heart palpitate and that some noises caused her to run outside and cry. Bishop left Speciality early on September 12, 2003, and never returned.
During a September 23, 2003, appointment with her surgeon, Bishop expressed anxiety about her ability to perform her duties at work and mentioned she had considered seeing a psychiatrist to discuss her concerns. Her surgeon referred her to a university psychiatry department, where she was diagnosed with posttraumatic stress disorder (PTSD) and situational anxiety and depression. Dr. William Marcil, an Omaha psychiatrist, treated Bishop. In Marcil's opinion, given with a reasonable degree of medical certainty, Bishop had a 25-percent permanent impairment of the body as a whole resulting from these mental conditions.
Bishop underwent vocational rehabilitation and completed an associate's degree program to become a drafting technician. She was hired by Nebraska Boiler, located in Lincoln, and paid $14 per hour. Bishop found, however, that if she was exposed to industrial noises in the production shop for more than 5 minutes, she became nervous and occasionally cried. Because of this, Bishop quit her job at Nebraska Boiler on august 18, 2006. she moved to Missouri, where she was employed at the time of the trial as a receptionist and secretary, earning $11 per hour.
Prior to trial, Bishop received a 22-percent impairment rating on her left arm and was paid $12,285.74 in permanent partial disability benefits for this scheduled member injury. Two experts evaluated her loss of earning capacity. Gloria Bennett, a court-appointed counselor, concluded that Bishop had sustained a 12-percent loss of earning power, after considering the mental and physical restrictions resulting from both injuries. Richard Metz, a vocational rehabilitation counselor hired by Bishop, found that Bishop sustained a 20- to 24-percent loss of earning power. Metz' assessment was made after Bishop completed vocational rehabilitation.
Metz relied in part upon the evaluations of Marcil. According to Marcil, Bishop has a 25-percent permanent impairment of the body as a whole due to the fear of operating power tools and machinery that Bishop developed after her April 29, 2003, accident. In August 2006, Marcil gave Bishop work restrictions which precluded her from using power tools. She was also restricted from working on assembly lines, at manufacturing or production shops, or in any other areas where there was machinery noise.
The trial judge determined that Bishop experienced a 35percent permanent loss of earning power, which entitled her to $111.60 per week for 173 3/7 weeks, less credit for permanent indemnity paid on the scheduled member impairment in the amount of $12,285.74. Citing Madlock v. Square D Co.,[2] the court noted that "[w]hen a whole body injury (anxiety, PTSD) is the result of an accident and injury to a scheduled member and the two are combined to determine permanent loss of earning power, the plaintiff is not entitled to a separate, additional award for the member injury."
Bishop applied for review of this determination, assigning as error that the court failed to award benefits for a 20-percent loss of use of her left arm. The review panel affirmed, finding that the trial court took into account the impairments and restrictions to Bishop's left arm when it determined her loss of earning power.

ASSIGNMENTS OF ERROR
Bishop assigns, consolidated and restated, (1) that the court's award failed to satisfy a rule of the Nebraska Workers' Compensation Court requiring the trial judge to specify the evidence upon which he or she relies and issue an opinion which affords a basis for meaningful appellate review, (2) that the court erred in concluding that her permanent loss of earning power based on PTSD and depression could not be fairly and accurately assessed without considering the impact of the scheduled member injury upon her employability, and (3) that the court erred in failing to award additional disability benefits for Bishop's scheduled member injury.

STANDARD OF REVIEW
[1] Under Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[3]
[2,3] Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong.[4] In testing the sufficiency of the evidence to support the findings of fact by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.[5]

ANALYSIS
Contrary to Bishop's contention, the trial judge issued a reasoned opinion specifying the evidence upon which he based the award. The court considered the evaluations performed by Bennett and Metz but found that both were deficient in that they did not take into account Bishop's inability to maintain her employment at Nebraska Boiler due to her recurrent, increased anxiety caused by proximity to industrial machinery. The court concluded that it could properly consider this evidence as a part of the totality of the evidence presented at trial in arriving at its conclusion that Bishop experienced a 35-percent permanent loss of earning power. The trial judge also made specific findings that Bishop's situational depression and PTSD resulted from her scheduled member injury and that permanent loss of earning power could not be fairly and accurately assessed without considering the impact of the scheduled member injury. These findings are sufficient for us to engage in meaningful appellate review, which includes an assessment of whether there is sufficient competent evidence to support the award.[6]
Bishop does not challenge the trial court's finding that she sustained a 35-percent loss of earning capacity, a higher rating than that given by either Bennett or Metz. She takes issue only with the court's determination that Speciality should receive a credit in the amount of the permanent indemnity benefits which it had previously paid on the scheduled member injury. In other words, Bishop contends that the court erred in not separately compensating her for the scheduled member and whole body injuries. In Zavala v. ConAgra Beef Co.[7] and Madlock v. Square D Co.,[8] this court examined the compensability of a scheduled member injury and an injury to the body as a whole sustained in the same accident.
[4] In Zavala, a worker sustained a scheduled member injury to her right arm and a whole body injury to her back in the same industrial accident. Noting that the Nebraska Workers' Compensation Act does not specifically address how compensation is to be established in this circumstance, this court concluded that when a worker sustains a scheduled member injury and a whole body injury in the same accident, the act does not prohibit the court from considering the impact of both injuries in assessing the loss of earning capacity. We held that in making such an assessment, the court must consider whether the scheduled member injury adversely affects the worker such that the loss of earning capacity cannot be fairly and accurately assessed without considering the impact of the scheduled member injury upon the worker's employability. We remanded the cause to the compensation court for further consideration in light of that holding, but did not address "the issue of whether a separate award for the scheduled member injury is permitted when considering the scheduled member injury with the whole body injury in the assessment of the loss of earning capacity."[9]
That issue was before us in Madlock. There, the worker sustained a scheduled member injury to her foot which altered her gait and resulted in a low-back condition. The trial judge considered the scheduled member injury in determining the loss of earning power caused by the back injury, but made separate awards for each. A review panel of the Workers' Compensation Court concluded that the trial judge had properly considered the impact of the member injury in awarding loss of earning capacity but erred in making a separate award for the member injury. In the worker's appeal, we framed the issue as a question of law: "whether a worker may recover benefits for both a scheduled member injury and a whole body injury resulting in loss of earning capacity when the member injury was taken into consideration in determining the loss of earning capacity."[10] After examining authority from other jurisdictions, we concluded that the whole body injury could not be separated from the scheduled member injury because both arose from the same accident and that if the worker had not sustained the scheduled member injury to her foot, she would not have sustained the injury to her back which entitled her to benefits for loss of earning capacity. We reasoned that under these circumstances, the trial court was required to consider the scheduled member injury in awarding benefits because the loss of earning capacity could not be fairly and accurately assessed without such consideration. Referring to the scheduled member injury as "an essential factor" in determining the loss of earning capacity award, we concluded that the review panel correctly determined that by allowing a separate award for the scheduled member injury, the trial court had awarded a greater recovery than that to which the worker was entitled.[11]
[5] Bishop argues that this case is distinguishable from Madlock because her scheduled member injury was not an "essential factor" with respect to her whole body impairment resulting from PTSD and depression. Specifically, she argues that because her wrist injury was not "required for the continued existence of her mental and emotional restrictions"[12] in the same sense as the foot injury and resulting gait impairment were linked to the back injury in Madlock, she was entitled to a separate award for the scheduled member injury. This argument focuses too narrowly on the "essential factor" language in Madlock and ignores what precedes and follows that phrase. Read in context, the phrase "essential factor" as used in Madlock pertains to causation. In this case, as in Madlock, both the scheduled member injury and the whole body injury arose from the same accident. If Bishop had not injured her wrist, she would not have sustained a compensable psychological injury inasmuch as a work-related injury caused by a mental stimulus is not compensable.[13] The trial judge made a specific finding that "but for [Bishop's] accident and scheduled member injury she would not have experienced the PTSD and depression," and there is competent evidence to support this finding of causation. Therefore, this case presents the same factual circumstances held in Madlock to require the compensation court to consider the scheduled member injury in awarding benefits for loss of earning capacity. When a whole body injury is the result of a scheduled member injury, the member injury should be considered in the assessment of the whole body impairment. Under such circumstances, the trial court should not enter a separate award for the member injury in addition to the award for loss of earning capacity. To allow both awards creates an impermissible double recovery.[14]

CONCLUSION
The trial judge issued a reasoned opinion which included factual findings supported by competent evidence. By considering Bishop's scheduled member injury in determining Bishop's loss of earning capacity, but not awarding separate benefits for the scheduled member injury, the trial judge correctly applied the law as stated in Zavala and Madlock. We therefore affirm the judgment of the review panel which affirms the award.
AFFIRMED.
NOTES
[1] See Neb. Rev. Stat. § 48-121 (Reissue 2004).
[2] Madlock v. Square D Co., 269 Neb. 675, 695 N.W.2d 412 (2005).
[3] Money v. Tyrrell Flowers, 275 Neb. 602, 748 N.W.2d 49 (2008); Knapp v. Village of Beaver City, 273 Neb. 156, 728 N.W.2d 96 (2007); Worline v. ABB/Alstom Power Int. CE Servs., 272 Neb. 797, 725 N.W.2d 148 (2006).
[4] Money v. Tyrrell Flowers, supra note 3.
[5] See Zavala v. ConAgra Beef Co., 265 Neb. 188, 655 N.W.2d 692 (2003), citing Frauendorfer v. Lindsay Mfg. Co., 263 Neb. 237, 639 N.W.2d 125 (2002).
[6] See Workers' Comp. Ct. R. of Proc. 11A (2009).
[7] Zavala v. ConAgra Beef Co., supra note 5.
[8] Madlock v. Square D Co., supra note 2.
[9] Zavala v. ConAgra Beef Co., supra note 5, 265 Neb. at 200, 655 N.W.2d at 702.
[10] Madlock v. Square D Co., supra note 2, 269 Neb. at 679, 695 N.W.2d at 415.
[11] Id. at 682, 695 N.W.2d 418.
[12] Brief for appellant at 13 (emphasis omitted).
[13] See Zach v. Nebraska State Patrol, 273 Neb. 1, 727 N.W.2d 206 (2007).
[14] Madlock v. Square D Co., supra note 2.