the issue before the trial court. See *Clark v. Tyrrell*, 16 Neb. App. 692, 750 N.W.2d 364 (2008). TJ did not challenge the constitutionality of § 77-5016 until the present appeal. Additionally, we note that TJ failed to comply with the notice provision for challenging the constitutionality of a statute as set forth in Neb. Ct. R. § 2-109(E) (rev. 2014). Because this issue was not raised before TERC, it is not properly before this court and we will not address it further on appeal.

## CONCLUSION

We conclude that TJ failed to prove by clear and convincing evidence that the Board's valuation was arbitrary and unreasonable. Accordingly, we affirm TERC's decision.

AFFIRMED.

--------

Elizabeth S. Canas-Luong, appellee, v.
Americold Realty Trust, appellant.
___ N.W.2d ___

Filed June 23, 2015.    No. A-14-751.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, the findings of fact of the trial judge will not be disturbed on appeal unless clearly wrong.

3. **Workers' Compensation: Time.** A claimant has not reached maximum medical improvement until all the injuries resulting from an accident have reached maximum medical healing.

4. ____: ____. The appropriate time to award permanent disability benefits is after the worker reaches maximum medical improvement.

5. **Workers' Compensation.** The Nebraska Workers' Compensation Act authorizes an award of permanent disability, either partial or total, as a means of compensating the injured worker for the loss of earning capacity.

6. ____. When a whole body injury is the result of a scheduled member injury, the member injury should be considered in the assessment of the whole body

impairment; and under such circumstances, the trial court should not enter a separate award for the member injury in addition to the award for loss of earning capacity because to allow both awards creates an impermissible double recovery.

Appeal from the Workers' Compensation Court: MICHAEL K. HIGH, Judge. Affirmed in part, and in part reversed.

Jon S. Reid, of Lamson, Dugan & Murray, L.L.P., for appellant.

Jeffrey F. Putnam, of Law Offices of Jeffrey F. Putnam, P.C., L.L.O., for appellee.

INBODY, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

Elizabeth S. Canas-Luong was shot 11 times by a coworker while working for Americold Realty Trust (Americold) in Crete, Saline County, Nebraska, on September 22, 2010. She sustained injuries to her right arm, left chest wall, lower abdomen, back, spleen, colon, liver, right kidney, and abdomen. She also suffered from psychological problems due to posttraumatic stress syndrome and depression. The Workers' Compensation Court found that Canas-Luong had reached maximum medical improvement (MMI) with respect to the physical injuries to her body, but that she had not yet reached MMI for her psychological injuries. The compensation court ordered temporary total disability from the date of the injuries through the date of trial and until such time as she reaches MMI for the psychological injuries. The compensation court also awarded Canas-Luong a 39-percent permanent partial disability for the impairment to her right upper extremity. The compensation court further ordered that after reaching MMI, Canas-Luong was entitled to be evaluated by a vocational rehabilitation counselor both for a loss of earning power evaluation and for help to find suitable work. Americold was ordered to continue to pay for future medical and hospital care as may be reasonably necessary, and Americold was given a credit for payments already made to Canas-Luong for indemnity benefits and medical bills. Americold appealed. Because

Canas-Luong has not reached MMI with respect to all of her injuries and was awarded ongoing temporary total disability benefits, we find that the compensation court erred by prematurely awarding her permanent partial disability for her right upper extremity. We therefore reverse that portion of the compensation court's award.

## PROCEDURAL BACKGROUND

On October 4, 2012, Canas-Luong petitioned for workers' compensation benefits for the injuries she sustained. Americold contested the extent and nature of Canas-Luong's injuries.

At the time of trial on October 17, 2013, the parties stipulated to the following: (1) Canas-Luong sustained an accident arising out of and in the course of employment with Americold on or about September 22, 2010, which resulted in injury to her right arm, left chest wall, lower abdomen, back, spleen, colon, liver, right kidney, and abdomen; (2) the accident occurred in Crete; (3) Canas-Luong gave timely notice of the accident; (4) Canas-Luong is entitled to benefits under the Nebraska Workers' Compensation Act; (5) on the date of the accident, Canas-Luong was earning an average weekly wage of $596.65 for purposes of temporary disability and permanent disability; (6) all of the medical expenses incurred as of the date of trial that were reasonably related to the accident and injury of September 22 had been paid or would be paid as set forth in exhibit 37; and (7) pursuant to Neb. Rev. Stat. § 48-120 (Cum. Supp. 2014), Canas-Luong is entitled to future medical care that is reasonable and necessary as a result of the accident and injury of September 22.

Canas-Luong testified at trial. Additionally, numerous exhibits (including medical records, vocational assessments, and loss of earning capacity analyses with multiple scenarios) were offered and received into evidence.

In its award filed on July 25, 2014, the compensation court found that (1) Canas-Luong was temporarily totally disabled from and including September 22, 2010, to and including the date of trial, a period of $160\frac{2}{7}$ weeks; (2) although Canas-Luong had attained MMI with respect to the physical injuries to her body, she was not at MMI for the psychological

injuries she suffered in the accident and therefore continued to be temporarily totally disabled; (3) the temporary total disability rate was $401.91 per week; (4) Canas-Luong was entitled to $401.91 per week for 160⅔ weeks of temporary total disability, and such payments shall continue thereafter for so long as Canas-Luong continues to be temporarily totally disabled; (5) once Canas-Luong reaches MMI with respect to all of her injuries, she is entitled to be evaluated by a vocational rehabilitation specialist both for determination of her present disability measured by loss of earning power and for help to find work that is suitable for her; (6) Canas-Luong was entitled to payment of $401.91 per week for 87.75 weeks of permanent partial disability for a 39-percent impairment to her right upper extremity; (7) Americold was entitled to a credit for payment to Canas-Luong for the indemnity benefits shown in exhibit 36 and for payment of all medical expenses incurred in the case as shown in exhibit 37; and (8) Americold was to provide and pay for such future medical and hospital care as may be reasonably necessary as a result of the accident and injury.

Americold timely appeals from the award.

## ASSIGNMENTS OF ERROR

Americold assigns as error that the compensation court (1) did not provide a decision with a meaningful basis for appellate review, (2) ordered Americold to pay Canas-Luong permanent partial disability benefits for her scheduled member injury to her right upper extremity without considering the impact of the scheduled member upon Canas-Luong's employability, and (3) awarded an impermissible double recovery to Canas-Luong when it ordered that Canas-Luong was to receive a separate award for a scheduled member injury and for a body as a whole injury, both of which occurred in the same accident.

## STANDARD OF REVIEW

[1,2] A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted

without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Simmons v. Precast Haulers*, 288 Neb. 480, 849 N.W.2d 117 (2014). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, the findings of fact of the trial judge will not be disturbed on appeal unless clearly wrong. *Id*.

## ANALYSIS

Americold's assignments of error and argument revolve around how to handle awarding compensation when a scheduled member injury and a body as a whole injury arise from the same accident. Americold suggests that the compensation court's permanent partial disability award of 39 percent for Canas-Luong's scheduled member injury (right upper extremity) and its order for a future separate loss of earning capacity for her body as a whole injury will result in an impermissible double recovery. Americold suggests that the facts in this case are similar to those in *Bishop v. Specialty Fabricating Co.*, 277 Neb. 171, 760 N.W.2d 352 (2009), which stands for the proposition that when a whole body injury is the result of a scheduled member injury and the member injury was considered in the assessment of the whole body impairment, a separate award for the member injury should not be entered. However, the application of *Bishop, supra*, to this case cannot be determined until such time as Canas-Luong is at MMI for all of her injuries, as will be discussed further later in our analysis.

Initially, we note that contrary to Americold's first assignment of error, the compensation court did provide a decision with a meaningful basis for appellate review. The details of that opinion were set forth in the background section of this opinion.

[3-5] The problem in the compensation court's order is not a lack of meaningful basis for review or that it is ambiguous; rather, the problem lies in its decision to award a permanent

partial disability benefit when Canas-Luong was not yet at MMI for all of her injuries. Although she had reached maximum medical recovery for her physical injuries, she had not yet reached that point with her psychological injuries. "[A] claimant has not reached [MMI] until all the injuries resulting from an accident have reached maximum medical healing." *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 765, 707 N.W.2d 232, 239 (2005). The appropriate time to award permanent disability benefits is after the worker reaches MMI. *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001). The Nebraska Workers' Compensation Act authorizes an award of permanent disability, either partial or total, as a means of compensating the injured worker for the loss of earning capacity. *Foote, supra*. Accordingly, the trial court was correct when it stated that loss of earning capacity would be determined when Canas-Luong reaches MMI. However, the trial court erred in awarding Canas-Luong payment for a 39-percent permanent impairment to her right upper extremity before she reached MMI for all of her injuries. This permanent partial scheduled member award was premature, since the compensation court determined that Canas-Luong was not yet at MMI for her psychological injury and was entitled to ongoing temporary total disability benefits.

In *Rodriguez, supra*, Santana Rodriguez suffered injuries to his neck, shoulder, knees, and back, in addition to severe depression, as a result of a work-related accident. The trial judge found that Rodriguez had reached MMI with respect to his neck, back, shoulder, and psychological injuries, but that he had not reached MMI with respect to his bilateral knee injuries. The trial judge determined that Rodriguez had suffered no permanent disability as a result of his neck, back, shoulder, and psychological injuries. Therefore, the single judge entered an award maintaining temporary total disability benefits for the injury to Rodriguez' knees, but denying permanent disability benefits for the other injuries. The Workers' Compensation Court review panel affirmed. The Nebraska Supreme Court reversed, finding that the trial court erred in concluding that Rodriguez had reached MMI and in making a determination as to Rodriguez' permanent disability.

The Nebraska Supreme Court noted that the trial court's reasoning (that Rodriguez had reached MMI with respect to his neck, back, shoulder, and psychological injuries, but that he had not reached MMI with respect to his bilateral knee injuries) would result in a claimant's being potentially entitled to simultaneous permanent and temporary disability benefits resulting from the same accident, "a result that is inconsistent with established precedent." *Rodriguez*, 270 Neb. at 763, 707 N.W.2d at 238. The Supreme Court stated that "a given condition cannot at one and the same time be both temporary and permanent." *Id*. The Supreme Court held that MMI, for purposes of deciding when a claimant's disability has become permanent, is determined by reference to the date on which all of the claimant's injuries from the accident have reached maximum recovery. *Rodriguez, supra*.

The *Rodriguez* court noted that "it may be difficult, if not impossible, to ascertain a claimant's true permanent disability when not all of the claimant's disabling injuries have reached maximum healing." 270 Neb. at 763, 707 N.W.2d at 238. The court cited to *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003), for the principle that determination of a claimant's permanent disability may require the court to consider the effect of different injuries that occurred in the same accident. The court said:

> As we explained in *Zavala*, 265 Neb. at 199-200, 655 N.W.2d at 702, "when assessing the loss of earning capacity for a back injury, it may not be reasonable to ignore the impact that the loss of a leg would have upon the loss of earning capacity when both injuries occurred in the same accident. The back injury does not increase the disability to the scheduled member, but the impact of the scheduled member injury should be considered when assessing the loss of earning capacity of the employee. The failure to do so would ignore the realities of the situation."

*Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 764, 707 N.W.2d 232, 238 (2005). And "'[w]hen multiple conditions prevent a claimant's return to the former position of employment, it is imperative that a permanency determination

include consideration of all allowed conditions.'" *Id*. at 764, 707 N.W.2d at 239 (quoting *State ex rel. Tilley v. Indus. Comm.*, 78 Ohio St. 3d 524, 678 N.E.2d 1392 (1997)). The Nebraska Supreme Court held that "a claimant has not reached [MMI] until all the injuries resulting from an accident have reached maximum medical healing." *Rodriguez*, 270 Neb. at 765, 707 N.W.2d at 239. The Supreme Court stated that the trial court erred in concluding that Rodriguez had reached MMI and that the trial court's determination regarding permanent disability benefits was premature.

Similarly, in our case, because Canas-Luong had not reached MMI with respect to all of her injuries, the trial court erred in determining that Canas-Luong had reached MMI with respect to the physical injuries to her body and in finding that she is entitled to payment for a 39-percent permanent impairment to her right upper extremity. See *Rodriguez, supra* (there is no provision in Nebraska law for partial MMI). Canas-Luong's physical injuries may have reached maximum medical recovery, but she will not reach MMI until her psychological injuries have also reached maximum medical recovery. By awarding payment for a 39-percent permanent partial disability to her right upper extremity and continuing temporary total disability payments, the trial court gave Canas-Luong simultaneous permanent and temporary disability benefits resulting from the same accident, "a result that is inconsistent with established precedent." See *Rodriguez*, 270 Neb. at 763, 707 N.W.2d at 238.

[6] It is unknown at this time whether Canas-Luong's permanent impairment to her right upper extremity should be factored into the loss of earning capacity analysis or whether a separate scheduled member award may be appropriate. In *Bishop v. Specialty Fabricating Co.*, 277 Neb. 171, 760 N.W.2d 352 (2009), and *Madlock v. Square D Co.*, 269 Neb. 675, 695 N.W.2d 412 (2005), the Nebraska Supreme Court held that when a whole body injury is the result of a scheduled member injury, the member injury should be considered in the assessment of the whole body impairment; and that under such circumstances, the trial court should not enter a separate award for the member injury in addition to the award

for loss of earning capacity because to allow both awards creates an impermissible double recovery. But, as previously noted, whether Canas-Luong's right upper extremity impairment should be considered in her loss of earning capacity cannot be determined until Canas-Luong reaches MMI for all of her injuries and a loss of earning capacity analysis is performed; and at that point, all injuries and their effects on loss of earning capacity can be considered at one time. See *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001) (appropriate time to award permanent disability benefits is after worker reaches MMI). Accordingly, we reverse the trial court's finding that Canas-Luong is entitled to payment for a 39-percent permanent partial disability to her right upper extremity, as such determination regarding permanent disability benefits was premature.

## CONCLUSION

Because Canas-Luong has not reached MMI with respect to all of her injuries, we find that the trial court erred in finding that she is entitled to payment for a 39-percent permanent partial disability to her right upper extremity. We therefore reverse that portion of the trial court's award. We affirm the remainder of the trial court's award as Americold claims no error with regard to the remainder of the award.

AFFIRMED IN PART, AND IN PART REVERSED.